37 F.3d 1484
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES of America, Appellee,
v.
George P. AMADO, Defendant, Appellant.
 No. 93-2005
 United States Court of Appeals,
First Circuit.
 Oct. 19, 1994
 
 Appeal from the United States District Court for the District of Rhode Island [Hon. Francis J. Boyle, Senior U.S. District Judge ]
 Robert J. Carnes, by Appointment of the Court, for appellant.
 Margaret E. Curran, Assistant United States Attorney, with whom Sheldon Whitehouse, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, were on brief for the United States.
 D.R.I.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and BARBADORO,* District Judge.
 Per Curiam.
 
 
 1
 On March 13, 1993, a severe snowstorm hit Rhode Island. About 4:00 p.m., near North Providence, police officer Christopher Conaty noticed a small blue Dodge operating erratically and skidding sideways into the oncoming traffic lane while attempting a turn. Conaty stopped and asked the driver, John Revertes, for his license and registration, which Revertes could not produce. Revertes said that he was going to the hospital to visit his sick daughter, but he was unable or unwilling to provide the name of his daughter. Following standard procedure, the officer called in Revertes' name and plate number over his radio to determine whether the vehicle was registered and whether it had been stolen.
 
 
 2
 George Amado, the defendant-appellant in this case, was a passenger in the back seat of the Dodge. Conaty remained at or near the Dodge while awaiting a response to his call. Before Conaty received the information from the radio call, he noticed that Amado was moving his hands furtively in and out of his leather coat. Conaty also noticed a bulge in Amado's coat. He asked Amado to remove his hands from his coat; Amado at first complied but then refused. Conaty drew his gun and ordered Amado to take his hands out of his coat. He called for backup assistance, which arrived almost immediately.
 
 
 3
 Conaty and the other officers ordered the occupants out of the car one at a time. Because he was seated in back, Amado was the last to get out. As Amado exited the car, Conaty grabbed him by the back of the jacket to lead him around the car to be frisked. Amado lunged at Conaty, shrugged out of his jacket, and fled. Amado was apprehended after a chase. During the struggle, a clear bag containing what appeared (and turned out) to be narcotics-actually, both cocaine and heroin-fell to the ground. The bulge in his jacket had been caused by a cellular phone and a beeper. The entire encounter took between five and ten minutes.
 
 
 4
 Amado was indicted by a grand jury on April 1, 1993. His motion to suppress the drugs was heard and denied on June 21, 1993, after the facts set forth above had been adduced. Four days later he entered a conditional plea of guilty to one count of possession with intent to distribute cocaine and one count of possession with intent to distribute heroin, in violation of 21 U.S.C. Secs. 841(a)(1) & (b)(1)(C). Amado reserved his right to appeal the denial of the suppression motion. Fed. R. Crim. P. 11(a)(2). On September 10, 1993, he received a sentence of 27 months' imprisonment.
 
 
 5
 On this appeal, Amado challenges the district judge's denial of his suppression motion. We think it is obvious that the seizure of Amado's drugs did not violate the Fourth Amendment. Only three points raised require comment.
 
 
 6
 The initial stop of the car in which Amado was riding was lawful. The district court found that the police officer witnessed a traffic violation in the midst of unusually hazardous driving conditions. See Delaware v. Prouse, 440 U.S. 648, 659, 661 (1979) (finding a traffic violation grounds for a stop); United States v. Lott, 870 F.2d 778, 784 (1st Cir. 1989) (same). A district court's findings of fact at a suppression hearing are reviewed for clear error, United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994); here there is no indication of error at all. Conaty might have been remiss in his duties had he not stopped the car.
 
 
 7
 The length and scope of the detention after the car was stopped were likewise justified. The entire episode took less than ten minutes. When Conaty noticed Amado's suspicious behavior, he had not yet received the results of the radio check on the vehicle registration. Revertes had not produced a valid registration, and Conaty could properly detain the vehicle until he found out whether the car had been stolen. There is nothing in the Constitution that requires a police officer who halts a car driven by one individual to ignore suspicious indications of other criminal activity or a threat to the officer from a passenger.
 
 
 8
 Once Conaty witnessed Amado's furtive actions, he had grounds to stop and frisk him. The bulge in Amado's coat, his failure to remove his hand, and his furtive movements permitted Conaty reasonably to conclude that Amado might be armed and dangerous. See Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977) (finding reasonable suspicion to order defendant out of a car and frisk him based on a traffic violation and a bulge in his jacket). At that point, Conaty was justified in ordering the passengers out of the car and attempting to frisk Amado. We find that each step in the process that led to the seizure of drugs from Amado was justified.
 
 
 9
 Affirmed.
 
 
 
 *
 Of the District of New Hampshire, sitting by designation